IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DAVID CHAPIN,** | § |
| *Plaintiff,* | § |
| v. | § **CAUSE NO. 1:24-CV-00455-JRN** |
| **IHI AGRI-TECH CORPORATION; AND SMALL FARM INNOVATIONS, INC.,** | § |
| *Defendants.* | § |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff David Chapin, Individually, and Pursuant to Fed. R. Civ. P. 15(a)(2), hereby files this First Amended Complaint against Defendants IHI Agri-Tech Corporation ("IAT"); and Small Farm Innovations, Inc., ("SFI"), collectively ("Defendants"). Defendants are unopposed to filing of this amended complaint. In doing so, Plaintiff respectfully shows the Court the following:

## I.
## PARTIES

1.01    Plaintiff David Chapin is a citizen and resident of Burnet County, Texas.

1.02    Defendant IHI-Agri-Tech Corporation is a foreign corporation formed under the laws of Japan. Defendant Agri-Tech has done and continues to do business in the State of Texas. Defendant Agri-Tech does not maintain a regular place of business in the State of Texas. Defendant Agri-Tech does not maintain a registered agent for service of process in the State of Texas. Defendant Agri-Tech may be served with process pursuant to the Hague Convention on Service

Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters at its Head Office in Chitose, 1061-2, Kamiosatsu, Chitose-shi, Kokkaido, 066-8555, Japan. This lawsuit arises from Defendant Agri-Tech's business in the State of Texas.

1.03  Defendant Small Farm Innovations, Inc, is a for-profit corporation organized under the laws of the State of Texas. Defendant's principal place of business is located at 3701 State Highway 36, Caldwell, Texas 77836. SFI has been served and entered an appearance in this suit.

## II.
## VENUE AND JURISDICTION

2.01  Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. 1332.

2.02  Defendants reside in the Western District of Texas—Austin Division, as the term is defined in 28 U.S.C. §1391 (c) (for venue purposes, a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced). Additionally, Venue is proper in the Western District of Texas—Austin Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omission giving rise to the claim occurred in Burnet County, Texas, which is located within the Austin Division. Plaintiffs would show that the incident made basis of this suit occurred at Plaintiff's farm, which is located in Burnet County, Texas.

## III.
## FACTUAL BACKGROUND

3.01  On or about November 6, 2022, 65-year-old, David Chapin was working at his farm located in Burnet County, Texas.  Mr. Chapin was baling hay using an IHI Model TRB0910B, Manufacturing No. 9853049, (the "Baler"). Upon information and belief, the Baler was designed and manufactured by IHI Defendants. The baler operates off a Power Take-Off ("PTO") shaft that

hooks into to a tractor and is pulled behind the tractor to collect grass and form the hay bales. From the tractor seat, the operator uses a power control module to operate the baler. Importantly, there is no power switch located on the baler itself. The only way to power on or off the baler is through the power control module or the tractor itself.



3.02    The Baler utilizes a binding device that, when engaged, wraps twine around the hay bale to keep it formed. The binding device is designed to automatically engage but requires the machine to be powered on to operate.  Once the binding device is engaged, the Baler wraps twine around the hay bale and the process is complete when the machine drops the bale out of the rear and begins collecting grass for the next bale. If the binding device does not automatically engage, it can be manually engaged by physically closing the lid, which pushes the binding device arms down, engaging them to wrap the twine around the bale. Manually engaging the lid and binding device requires the operator to exit the tractor where the power to the Baler and the power to the tractor is controlled.

3.03    Mr. Chapin purchased the Baler from Defendant SFI in Caldwell, Burleson County, Texas, who provided him training and instructions on how to manually engage the binding device

in the event it fails to automatically do so. Mr. Chapin was attempting to manually engage the binding device as instructed and trained to do, by Defendant SFI, when his right hand became entangled in the twine. Mr. Chapin's dominant right arm was pulled into the Baler suffered catastrophic damage, which ultimately led to amputation at the shoulder.

## IV.
### STRICT LIABILITY AND NEGLIGENCE CLAIMS AGAINST DEFENDANT IAT

4.01   The Baler at issue in this suit was designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed into the stream of commerce by and through the agents and/or representatives of Defendant IAT.

4.02   Defendant IAT was regularly engaged in the business of supplying or placing products, like the Baler in question, in the stream of commerce for use by the consuming public, including Plaintiff.  Further, such conduct was solely for commercial purposes.

4.03   The Baler in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendant IAT until it reached Plaintiff and ultimately led to his injuries. Stated another way, the Baler in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04   At the time the Baler was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the Baler would be used by persons such as Plaintiff in the manner and application in which it was being used at the time Plaintiff suffered his injuries.

4.05   There were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Baler at the time of manufacture and that governed the product risk that allegedly caused harm. Alternatively, the design of the Baler did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the Baler model at the time

of the manufacture and governed the risks that caused Plaintiff's injuries. Again, in the alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the Baler, withheld or misrepresented the information or material irrelevant to the federal governments or agencies determination of adequacy of the safety standards or regulations at issue in the action.

4.06   With respect to the design of the Baler, at the time it left the control of Defendant IAT, there were safer alternative designs. Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Plaintiff. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of Defendant IAT by the application of existing or reasonably achievable scientific knowledge.

4.07   At the time the Baler left the control of Defendant IAT, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury. By way of example and without limitation, the product in question was unreasonably and dangerously defective in the following ways:

a.   the Baler was defectively designed because it failed to protect a user, such as Plaintiff is a reasonably foreseeable accident; and

b.   the warnings and instructions for the Baler were inadequate.

4.08   The above unreasonably dangerous defects in the Baler in question were the proximate and producing cause of Plaintiff's injuries and damages.

4.09   Defendant IAT breached its duty of care and was thus negligent by:

a.   designing and distributing the Baler model with a design standard that was intended to meet the minimum government regulations, instead of safely designing the Baler to reasonably minimize injuries in foreseeable accidents;

b. failing to adequately monitor the performance of IAT Balers in the field to ensure that they were reasonably minimizing injuries in foreseeable accidents;

c. failing to adequately test the Baler model to ensure that it would be reasonably safe in foreseeable accidents;

d. failing to adequately test the Baler for the TRB0910B model to ensure that it would be reasonably safe in foreseeable accidents;

e. failing to design, monitor, and test the binding device system to protect users such as Plaintiff in foreseeable accidents;

f. failing to design the Baler with an accessible power cutoff button/switch on the housing unit to protect users like Plaintiff from foreseeable accidents, including foreseeable misuse;

g. failing to design the Baler with a guarding device to prevent the user from being entangled in the device during foreseeable accidents, including foreseeable misuse;

h. failing to provide adequate warnings and instructions with the Baler;

i. failing to provide adequate post-sale warnings, recalls or retrofits after Defendant IAT knew, or should have known, that the Baler model was defective and unreasonably dangerous; and

j. failing to recall, retrofit, or issue post-sale warnings after IHI knew, or should have known, that the Baler model was defective and unreasonably dangerous.

4.10   The above negligent acts and/or omissions were a proximate and producing cause of the injuries and damages alleged by Plaintiff, herein.

## V.
## NEGLIGENCE CLAIMS AGAINST DEFENDANT SMALL FARM INNOVATIONS, INC.

6.01   Defendant SFI was negligent in that it failed to exercise reasonable care in instructing and/or training Plaintiff on the Baler at the time of purchase and prior to the incident. Defendant SFI knew or should have known that the Baler was unreasonably dangerous given its foreseeable uses.  At all times herein mentioned, Defendant SFI knew, or in the exercise of reasonable care should have known, that the instructions provided to Plaintiff would put him at risk of serious injury or death. Defendant SFI was also negligent in its failure to provide proper

warnings regarding the use of the Baler. These acts and omissions, taken singularly or in combination, were a producing and/or proximate cause of the Plaintiff's injuries and damages.

## VI.
## DAMAGES

6.02    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages.  Pursuant to TRCP 47, seeks monetary relief in excess of $1,000,000.00. The elements of damages suffered by Plaintiff include, but are not necessarily limited to:

   a. Past and future physical pain;

   b. Past and future medical care and treatment;

   c. Past and future mental anguish;

   d. Past and future impairment;

   e. Past and future disfigurement;

   f. Lost wages and loss wage earning capacity; and

   g. Costs of court.

## VII.
## EXEMPLARY DAMAGES

7.01    Plaintiff alleges that each and every negligent act or omission of Defendants and their agents, as set forth above, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others and that Defendants had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of David Chapin, and others like him and therefore, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which Plaintiff now plead against Defendants. Additionally, by reason of such conduct, Plaintiff is entitled to, and therefore asserts, a claim for punitive and exemplary damages in an

amount sufficient to punish and deter Defendants, and others like them, from such conduct in the future.

## VIII.
### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

8.01   Plaintiffs claim prejudgment and post-judgment interest at the maximum rate allowed by law.

## IX.
### JURY DEMAND

9.01   Plaintiffs respectfully request the Court impanel a jury to decide all fact issues in this case.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer this Petition and that upon final hearing, Plaintiff recovers judgment against Defendants for his damages as they appear at trial hereof together with costs of court, prejudgment and post-judgment interest, and for such general and equitable relief as Plaintiff may be entitled.

Respectfully Submitted,

*/s/ James L. Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
Jim@PayneMitchell.com
**ANDREW S. BULLARD**
State Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

**ATTORNEYS FOR PLAINTIFFS**